UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

AMY ARUNDELL, and A BETTER CONTRACT
SLATE,

                             Plaintiffs,

                     -against-

UNITED FEDERATION OF TEACHERS,

                          Defendant
----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF AN APPLICATION FOR A <u>PRELIMINARYAND PERMANT  INJUNCTION</u>

### <u>INTRODUCTION</u>

This is a complaint for injunctive relief related to the misconduct of a union President during an intra-union election campaign. Plaintiff Arundell is the Presidential candidate at the head of a slate of candidates challenging the slate headed by the incumbent United Federation of Teachers ("UFT") President, Michael Mulgrew. By this action, Plaintiffs complain about the President's utilization of union resources to circulate an email to the union's 200,000 plus members which praises his purported accomplishments around pension matter, and attacks his critics. Plaintiff has asked for equal opportunity to send out an email, and, to date, has been denied the use of the same forum to promote her candidacy, and explain her slate's perspective on the union's pension program.

Plaintiffs file this application to move this Court to issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendants, during the pendency of this action, from failing to allow plaintiffs to send a union-wide email prior to the mailing of the ballots on May 1, 2025, whether it be in response to UFT President Mulgrew's email of April 16, 2025 or simply because Plaintiffs have requested an opportunity to send a union wide email as is their right under 29 USC Section 481(c).

28 USC Section 481(c) provides, in relevant part as follows:

> (c) REQUESTS FOR DISTRIBUTION OF CAMPAIGN LITERATURE; CIVIL ACTION FOR ENFORCEMENT
> Every … local labor organization, and its officers, shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office, to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members, and whenever such labor organizations or its officers authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate or of the labor organization itself with reference to such election, similar distribution at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution.

## STATEMENT OF FACTS

Plaintiffs incorporate by reference the statement of facts contained in paragraphs 1 through 16 of the First Amended Verified Complaint and paragraphs 1 through 6 of the Declaration of Arthur Schwartz, dated April 24, 2025 ("Schwartz Decl.").

## ARGUMENT

## PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

### I. Applicable Standard

A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." New York City Triathalon, LLC v. NYC Triathlon Club, Inc., 704 F.Supp.2d 305, 312 (S.D.N.Y. 2010), quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374 (2008). Irreparable injury must be "likely in the absence of an injunction;" it is not enough for a plaintiff to face some "possibility" of irreparable harm. Winter, 129 S.Ct. at 374. This is because a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 376.

Notwithstanding the Supreme Court's decision in Winter, the Second Circuit has continued to allow parties to obtain a preliminary injunction either through: (1) "a likelihood of success on the merits"; or (2) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 242 (2d Cir.2009); Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 116 (2d Cir.2009). See also Citigroup Global Markets v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 38 (2d Cir. 2010).

### II.  Plaintiffs Have a Substantial Likelihood of Success on the Merits of their Underlying Claims

a)  **Plaintiffs are likely to prevail on their § 481 (c) claims.**

Plaintiffs assert two claims in their First Amended Complaint:

1. By allowing Michael Mulgrew to use the UFT email mailing list for a barely disguised partisan mailing and not allowing Plaintiffs an equal opportunity to do the same, UFT has violated 29 U.S.C. § 481 (c).

2. Even if Mulgrew's email was not campaign literature, by not allowing Amy Arundell and the ABC Slate the opportunity to send out an email to the UFT membership after a request was made, UFT has violated 29 USC § 481 (c).

In order to prevail on a claim under § 481 (c) of the LMRDA, for equal access to pre-election literature distributed by a union a complainant must demonstrate that (a) she was a bona fide candidate and (b) that there was an impermissible distribution of campaign literature by the union. See New Directions v. Seda, 867 F.Supp. 242, 244 (S.D.N.Y 1994).

Section 481 (c) provides that:

> Whenever … labor organizations or its [sic] officers authorize the distribution by mail or otherwise to member of campaign literature on behalf of any candidate or of the labor organization itself with reference to such election, similar distribution at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution.

29 U.S.C. § 481(c).

There is no dispute that Arundell has qualified to be a candidate for President in the UFT's upcoming election (which will see ballots going out on May 1, 2025) , or that the A Better Contact Slate has qualified scores of candidates to run for various positions in that election.

In determining whether there has been impermissible usage of a union publication under 401(c) a Court must consider its overall timing, tone, content, and context.  New Directions, 867 F.Supp. at 244.  The Second Circuit has recognized the use of a union publication to be impermissible under 401(c) and analogous to campaign literature where there is substantial favorable coverage of a candidate in a publication in close proximity to an election.  See *Guzman v. Loc. 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 151 F.3d 86, 90 (2d Cir. 1998) (finding a publication was an impermissible use of a union publication as campaign literature where there was "enough highly favorable coverage of the [defendant]" in a mailing made seven months prior to an election).

In the case at bar, the timing, tone, and content of Mulgrew's email falls squarely within the contours of Guzman, which was a publication 6 weeks  before an election. Here two weeks before the ballots were set to go out, Mulgrew writes about the two hot-button issues in this election: pensions and the attempt by Mulgrew and the City to force all UFT retirees (who are voters) onto Medicare Advantage coverage.

Mulgrew starts with this heading:

### On misinformation versus real threats

We sent out communications a couple of weeks ago to clear up the intentional misinformation campaign around our pension system.

The alleged misinformation is the campaign literature put out by , and litigation supported by the A Better Contract Slate. See the Arthur Goldstein blog republished in Paragraph 8  of the Complaint and the news article at https://www.thecity.nyc/2024/06/24/medicare-advantage-uft-retirees-mulgrew/. With the headline **Teachers' Union Withdraws Its Support for Medicare Advantage Pact, Following Retiree**

**Election Upset***"The courts have spoken. My members have spoken," said UFT President Michael Mulgrew.* . The article includes the report:

> Last week, an opposition group that campaigned on blocking the health care switch trounced the UFT-backed slate in retiree chapter elections for the first time in the chapter's 40-year existence.
>
> "The courts have spoken. My members have spoken. We're having a big problem with the city now on this other thing," said Mulgrew. "Why are we continuing to cause this — for our members, for the retirees of New York City who worked for our city — this anxiety, and fear and all sorts of other things?"…
>
> The union leader played a key role in negotiating the health plan change and faced a member revolt over the issue even before this month's retiree union election upset. Last year, an insurgent group of union retirees and current workers circulated a petition [backing an internal union referendum vote](#) for any changes to retiree or active workers' healthcare coverage.

Goldstein asserted that the UFT owed the City an alternative $600 million in savings, and that that savings involved a bill introduced, as part of her budget, which would allow NYC to skip 6 years of payments into the teachers' pension plan.

Mulgrew was, without question, responding, using union resources, on this hot button issue. His communication falls squarely within the bounds established by Guzman.

Additionally, even if it wasn't union-paid for campaign literature, it was proof that the UFT communicates by email with its members (with emails even stating their first name, and Plaintiffs have a right, under the first part of Section 481 (c) to send out emails to all or part of the membership; a sufficient request has been made, both by counsel and by Ms. Arundell. See *Dimondstein v. Am. Postal Workers Union*, 964 F. Supp. 2d 37, 43 (D.D.C. 2013).

**III. Plaintiffs will be Irreparably Injured By Defendants' Unenjoined Conduct**

**a) Plaintiffs will be irreparably injured if the lopsided electioneering is not balanced with an equivalent mailing.**

There is less than a week remaining before ballots are mailed out in the officer election. If an equivalent emailing mailing is not issued to counter the one-sided picture presented by Mulgrew, the uncontested picture that publication has presented to the union membership will be allowed to influence the result of the election, in all probability to the detriment of plaintiffs. See, e.g., New Directions, supra. This is an outcome that this Court will not be able to remedy after the fact via an award of damages, a clear indicia of irreparable injury. Cf. Jackson Dairy Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) ("[f]or it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation").

**IV. The Balance Of Hardships Militates In Favor Of Plaintiffs**

**a) Plaintiffs are at a clear resource disadvantage to the defendants who are using the full resources of the union to promote the candidacies of the incumbents.**

Ordering an emailing to counter the Mulgrew email at union expense would simply place both parties in an even playing field. This is hardly prejudicial to the defendants, while leaving the asymmetry effected through defendants' actions in place clearly prejudices the plaintiffs. Moreover, leveling the playing field accomplishes an important policy goal of the LMRDA—Section 401(c) of the LMRDA requires that campaign literature be distributed by a union "with equal treatment as to the expense of such distribution."

## CONCLUSION

For the foregoing reasons, the preliminary injunctive relief, and such other relief

as the Court determines should be granted.

Dated: New York, New York
      April 24, 2025

Respectfully submitted,
ADVOCATES FOR JUSTICE
CHARTERED ATTORNEYS
*Attorneys for Plaintiffs*

_/s/ *Arthur Z. Schwartz*_____
By: Arthur Z. Schwartz (AZS 2683)
225 Broadway, Suite 1902
New York, New York 10007
Tel: 212-285-1400
Fax: 718-228-5537
